The next matter is number 221118, Richard J. Gilbert v. Kent County Memorial Hospital et al. At this time, Attorney Brenner, please introduce yourself on the record to begin. Good morning. Jeffrey Brenner and with me, Katelyn Smith, representing the appellant, Dr. Richard Gilbert. Counsel, let me ask you at the outset, what is the standard of review we want this court to apply? May it please the court, yes. The standard that this court had articulated in Singh applies to the HCWA issue. There's no dispute about that. Singh, obviously, the 2002 case from this court was different in that it involved Dr. Singh, who was upset that Blue Cross was not allowing him to be part of their insurance package, and there was a process in place that Dr. Singh just didn't comply with, with the audits. That's not what we have here, a completely factually separate situation. While Attorney Duffy and I have plenty of disagreements, I think the one thing we can all agree upon is that Dr. Gilbert has exercised the rights that he had in a timely and participatory fashion. Which brings us here today. My question is, obviously, this is a summary judgment, and summary judgment, we review the NOVO, but under the HCQIA, there's a very heavy burden in the court below, and we review it at the NOVO, for a plaintiff, and there's a presumption of immunity. Am I correct? Sure. There's two standards of review. Under HCWA, it's a separate standard, which is set forth in Singh, this objective standard about, might a reasonable jury, viewing the facts in the best light for the plaintiff, conclude that he is shown by the preponderance of evidence that the defendant's actions are outside the scope of HCWA. That works for HCWA. It's sort of like a hyper-standard compared to the ordinary summary judgment standard, which I'm not even going to say, but that's what would apply to the state law immunity claims. So you have two separate standards that's being reviewed. And now this appeal concerns whether the HCWA immunity applies to the hospital's Board of Trustees decision when it changed the hearing panels and the MECs, you know, the Executive Committee's recommendation of a 29-day suspension because of the orderly running of the hospital into a revocation in the interest of patient safety. And Judge Gelpi, I listened to you during that first argument today where you stated that, well, it might not be a criminal finding, but it's a very serious thing. And it's the same that we have here in that while this isn't criminal, it's still very serious. And it's going to be a scarlet letter that Dr. Gilbert carries around with him for the rest of his life and could possibly even end his professional career. And I was going to ask you, because I believe he's not going to be working at the hospital anymore, correct? Correct. He does not. But he just wants what you said, that scarlet letter removed. That's why it's, in your opinion, this is not moved. He said it's undisputed that during the hearing panel process, so the original peer review process, I'm not coming back to do my clinical privileges. Even before there was any adverse finding, it's like, you know, they obviously don't like me. I'm not coming back. Dr. Gilbert is in the courtroom today. Didn't he? Excuse me. Yes, ma'am. The complaint had been filed. It was being investigated. Only under those circumstances did he say, he didn't say, I'm never coming back. He said, it is not my intention to resume clinical privileges. Your opponent says, one, it's irrelevant. Two, it was not a guarantee that he would not come back to practice, either at Kent or at some other hospital. And that the statute itself makes it very clear, and the legislative history, that the concern is about patient safety overall, including beyond this particular hospital. Sure. That's the statute, correct. And the issue, yes, and the issue that we have is that the board of trustees went beyond what it's supposed to do under the bylaws. The bylaws clearly... Do we agree that the bylaws actually are not the question for whether you have shown, by a preponderance of the evidence, enough to overcome the presumption of HIPAA immunity? We do not agree with that, because that's part of the whole analysis, Judge. In that the bylaws give specific, three specific things that... I'm sorry, you say the bylaws amend the federal statute that says it has to be a reasonable determination that this guy could be thought a threat to patient safety? I'm not saying that at all, Judge. What I'm saying is that as part of the determination for HIPAA immunity and immunity under the Rhode Island law, that you have to look at what the bylaws say that the trustees are supposed to do. That's part of the whole rights that the doctor... What you're saying is if they don't follow the bad laws, it sort of shows bad faith. Am I correct? That's part of it, yes. It shows bad faith, and it really throws caution to the wind and leaps beyond where they're supposed to be. Specifically, under the bylaws... Let me just understand this point. Suppose there's a minor violation of a bylaw. What's the significance of that for whether you can bring a HIPAA claim? I think whether it's a minor or a major violation, that would be up to the judge to determine whether that's significant enough to be a violation. Well, that's what I'm trying to figure out. I'm not sure what you mean by minor. I think we have a major violation here. That's fine. But what I'm just trying to figure out is whether how the... And I think this is implicit in Judge Lynch's question to you. How does compliance with the bylaws bear on the standard articulated in the statute that determines whether you can show what you can to overcome the immunity the statute defaults to giving? Sure. Remember, there's two statutes. On the HIPAA... Just HIPAA. Just HIPAA. HIPAA looks at the totality of the circumstances where you're looking at the procedural rights from beginning to end, not just at one point in time like with the immigration matter we just had where you look at the last entry. This is the entire scope of the procedure that's been involved. And at any point in time, is there a procedural issue? And I think that is important because as you get... I guess what's implicit in my question and what's a little bit concerning is is it... It would make HIPAA into a federal statute for enforcing bylaws of these entities. And do federal courts... Does that make a whole lot of sense that we'd be... So I guess that's what I would just... Is that what you're saying is that we're supposed to do that? And if we find a little bylaw violation, then no HIPAA immunity? Or are you saying something different than that? I think the last thing the federal courts want is to become the arbiter for all administrative appeals at universities or hospitals and all that. How are you interpreting HIPAA in a way that you can win that doesn't have that consequence? Yes, the way I'm interpreting HIPAA is that when you have a situation here where you take a 29-day suspension for disrupting the orderly conduct that the orderly operations of the hospital and turn it into a privileged revocation because of the interest of patient safety, that's changed the point. And the board of trustees got way outside of the box they were supposed to be in. They had three options. They had to either determine whether... If it wasn't... They had an option to say... They had a role to show that the decision by the executive committee was sufficiently supported by the record. That doesn't mean that, oh, we want a different finding. In fact, there was no finding that they found that was different based upon facts. They just said that, well, we want it to be that there's patient safety involved, even though the peer review committees on the hearing panel and the medical executive committee didn't go that route. So they had three options. They either had to remand the case to the executive committee with directions for further consideration. They didn't do that. They could have referred the matter to a board committee or a joint committee of the board and the medical staff. They didn't do that either. And they could have taken the final action increasing or decreasing the severity of the recommended action. But that doesn't mean that they can convert something from orderly functioning of the hospital to patient safety. And that's where, on the HICWA, on the Rhode Island statute, that's what they did. What supports that last position? The one I just stated was to take action increasing or decreasing the severity of the recommended action. And I think under the totality of the circumstances, by taking a 29-day suspension through a revocation was wrong and prejudicial to Dr. Gilbert. But in addition to that, by putting it into patient safety as opposed to the conduct at the hospital, that creates a totally new situation. And what supports that reading of the bylaw? That is what the bylaws say. I don't quite... The bylaws don't use the words you use to describe it the way you want it to say. The words are what they are. The bylaws section I read from is the joint appendix at page 85, Review by Board of Trustees. Yeah. But you recharacterized it in a way that said you can't take something and make it into something else. I wasn't reading from the bylaws. I'm trying to explain what I felt that that... And I'm saying what supports what you feel the bylaws say. That's my argument in explaining what I believe the third option is. And what supports that reading of the bylaw, which presumably is not what the board thought, because the board had those bylaws and didn't do what you wanted to do. There's no case law support of that in the First Circuit and that's... Perhaps there will be after today. Again, the 2002 case in seeing... Wouldn't it make some sense to say that the board would have to be... I mean, what standard... If there's ambiguous language in a bylaw about what that could mean, what are we supposed to do in applying it given the HCWA standard? Do you follow the question? I think what you're asking, Judge, is should HCWA allow... The court doesn't want to be the arbiter over every single... Interpretive dispute about what a bylaw does or doesn't allow the board to do. So how do you respond to that problem, which is the board had this bylaw. They did what they did. You say, well, under that bylaw, you can't do it. You read the text of it. It's not as clear as you probably wish it was. I think that the board here... It was operating like in a star chamber and they just wanted to do whatever they were going to do regardless of any confines of the bylaws. And they wanted him out. It made a mockery of the entire peer review process. Counsel, may I ask... While this was going on, the district court kept these records under seal. But you, in your brief to us, say a lot of this stuff is public knowledge. That's why this case is important. We need to clear his reputation. And there is the public board of Rhode Island of registration findings and discipline. Why should this matter continue to be under seal? I think given the nature of the facts and the discovery that was in this case, the Rhode Island Board of Medicine has the consent order and that's it. There's nothing beyond that that I believe that the public can access. Whereas in this case... Excuse me, why should we continue? Federal courts very rarely seal things. And it's even rarer for the Court of Appeals to continue to keep matters under seal. So again, why... You chose to bring this appeal. You chose to put these matters into contention. Your argument raises issues of law that are of broad applicability. Well beyond this case, you've made a number of arguments about the role of bylaws. So why should we continue to keep this under seal? If it's just on the law, I agree. But as it gets explained to some of the facts, and remember, the entire investigation was because of the... When Dr. Gilbert was on administrative leave and then suspended with the allegations about accessing stairwells and sitting in a car, that's what actually led to the discipline. Except that the record then was polluted with all of the other allegations about the itching and the scratching and that it sort of took over. But you're already saying things that touch on the facts that I think are the sealed facts. Again, in a very, very general way. So I think what we should do is... You may be receiving an order for us addressing the sealing issue, but we can do that post-argument. I don't mean to cut into the sedlitz, but I think the Court may very well want you to address the sealing issue post-argument. It was sealed in the District Court. It just followed it up here. I understand, yeah. There are a lot of things I can be blamed for. I'm not sure that one is it. We're not blaming you. We're just giving you fair warning. We just have the situation where I think you're right. The briefs are sealed. Yes. But they're also being talked about. And a lot of things, there's a disconnect in that regard. And the parties knew that you were going to come for oral argument and also had submitted sealed briefs. And neither party made any motion about unsealing anything. So I think the Court is going to follow up most likely and ask you to address the sealing issue. If I may, one final point on the response to the question of the Board of Medicine. All that occurred after the Board of Trustees here made their decision. So Dr. Gilbert was already in a pretty bad situation having been revoked. And it is what it is. But he has always maintained his rights that he's had here to proceed and appeal, whether it be before the panel or the Executive Committee. The outcome at the panel and the Executive Committee was acceptable to both sides. Nobody appealed that. And how you got there, the outcome was acceptable. And then all of a sudden, the outcome was completely changed by the Board of Trustees. And that's not an acceptable outcome. Thank you. Thank you. Thank you, Counsel. At this time, would Attorney Duffy please introduce himself on the record to begin? Good morning, Your Honors. Robert Duffy for the defendants Michael Dacey and Kent Memorial Hospital. I would like to address first the questions posed and the distinction between the bylaw test and the Health Care Quality Improvement Act test because they are extremely distinct. The federal statute has its own test. And all the courts that have considered this have said that's the test that needs to be applied in the question of immunity under the Health Care Quality Improvement Act, Section 1112A. It's not whatever the bylaws say. And I'm sure the Court's aware in the cases that have come before the circuits, bylaws vary very differently in each of those cases. And the question of whether the bylaw is violated isn't the question that the Court asks when it comes to the federal immunity. And I think it's really important in this case. But I guess it's the intersection of those two things. You're not denying that egregious violation of the bylaws could bear on the question of whether the immunity is available, correct? I'm not disagreeing with that in principle, Your Honor. So how does it cash out in your view here? There's a set of bylaws. There's a set of contentions that the bylaws weren't followed. You say, well, that can't be determinative, just the assertion that they're not followed. Even some disputes over whether they were followed can't be it. I think you're saying to us it's not our job to figure out whether they were followed. And yet you're also acknowledging, as I think you kind of have to, that one way we can assess whether the immunity applies is by seeing how well they follow their own rules. So how do we put those two things together? Well, I think how I'd like to address that, Your Honors, I'd like to say that the four prongs of the Health Care Quality Improvement Act immunity are the primary test that this Court must apply. When the Court gets into that test, it is going to look at the due process prong in the bylaw. It's going to look, not as dispositive, but was there an adequate effort? Because as you know, you don't have to follow necessarily the bylaw under the Health Care Quality Improvement Act. It says that right in the statute, but there has to be adequate process. And so I think it's instructive to the Court. I don't think it's dispositive. And as the Court held in Singh, prong four, which really is the only argument made here, the first three prongs seem to be conceded, prong four does overlap somewhat with prong one, but prong two deals with gathering the facts, and prong three deals with the due process component. And neither of those are alleged to have been violated here. So what the Court's really asking, I think, is was there a reasonable basis for the action taken? And if it goes back to prong one, was there a reasonable belief it was in further incipation quality? And I think that's where we are. And I think the record before the Court, it's undisputed based on the findings from the hearing committee. The findings which we've detailed in our briefing, you have the hearing committee report, make it clear that there is a factual basis for the action taken. And as this Court held in Singh, or noted in Singh, it doesn't have to be the least disruptive corrective action to the physician, because the focus is on patient safety, not on physicians. And I want to touch on the patient safety because that isn't really the test. You know, the framing of this test isn't that there was a reasonable belief that revocation of privileges was in the interest of patient safety. That's how Dr. Gilbert frames it. It's whether there was a reasonable belief that it would further quality medical care and it was warranted by the facts. And reasonable belief is defined as a reasonable belief that the action that you're taking as a reviewing body would or could either restrict incompetent behavior or protect patient safety. And so the reasonable belief standard is a broad standard. And embodied in that, as courts have held, is the discretion that has historically and traditionally been provided to health care providers to conduct their peer review to protect patients. And this patient safety question, although it's come to dominate this, I don't think it should. But I will say patient safety was at the heart of this from the beginning. As the court knows, the initial suspension stated that it was in the interest of patient safety and for disruption of the order of the operation of the hospital. The MEC, which reviewed the initial suspension, affirmed the suspension on that basis. It then went to the hearing committee. And what did the hearing committee do? If you read carefully the hearing committee opinion or recommendation and report, at the end of it, it makes a point of a balancing test. That essentially because Dr. Gilbert has said he doesn't intend to continue his privileges at the hospital, we have to balance, you know, the interest of a physician in his career as well as the interest of the hospital in protecting patients and running the hospital in an orderly way. When the board got that, it's obvious from the minutes and Mr. Rapucci's affidavit, chair of the board, they didn't agree with that. There is no balancing test here just because he's not coming back. Because that isn't what we're about as a healthcare institution. And I think it's very clear, as Judge Lynch noted, I mean, it may be a scarlet letter, as Dr. Gilbert's attorney said, it's supposed to be a scarlet letter. You know, it's supposed to let other institutions know this happened. It doesn't mean he won't be hired down the road. It just means that he has to. He has to explain what happened. And if the institution wants to hire him, nonetheless, they hire him. But the board, and I quote from one of the comments made, it's in the minutes, they didn't want to kick the can down the road for some other hospital to deal with. And I think it's really important here that institutions as a principle for this court, under this federal statute, it be clear that there's a deference given to peer review activities. And if they comply with the four prongs, then immunity applies. Can I ask you a rather technical question, which is it's clear that the heightened standard of review or the protective standard of review applies when there's a damages action. I think it seems clear that there's a separate provision which precludes a complainant from getting a certain type of injunctive relief. Am I right about that under the statute? Yes. What does the statute have to say or what are we to do with a declaratory judgment? Well, I've thought about that, Your Honor. Okay, good. But what I've... It doesn't mean I came up with a clean response for you, but I'm not sure what I came up with. I'm not sure what the court would declare. Well, they wanted a declaration that the immunity wouldn't apply. It was one thing. And then I think they wanted the declaration. I mean, they have the statement on their prayer for relief. I forget all the components of it, but I think it was that there was a violation. All right. So in the first question, the court could find that immunity doesn't apply based on this record because there are significant questions if, not from my perspective, but if the court's going to find that there was some failure to satisfy these four prongs, I don't know what that could possibly be because the first three are conceded and the fourth is a question whether it was warranted by the facts known at the time or whether it wasn't warranted. And I think the court would essentially have to say, well, we're going to substitute our judgment. And the court doesn't, you know, under the Health Care Quality Improvement Act, that's something the court's not called to do, substitute its own judgment. So I'm not sure how there could be a basis for it. And I'm not sure how it would be worded, but then the court's going to run right into the consent order because the Rhode Island Board of Medical Licensure and Discipline conducted its own investigation based on precisely this event. And in the consent order they state exactly what they did and it's clear it's based on this event. They interviewed the nurses as did the hospital. They interviewed Dr. Gilbert as did the hospital. We saw two psychiatrists or two medical professionals. And they came up with findings which Dr. Gilbert agreed to. And if this court issued a declaratory judgment saying that immunity didn't apply, you would have to find under the bylaws lack of good faith. And it would have to find under the statute lack of good faith. And it would have to find under the health care quality immunity. I see. So in this case it just doesn't matter. It's the same question basically. It's the same question. Yeah, yeah. I got it. Because if there was no reasonable basis for the action taken and Dr. Gilbert has admitted violations of the statute. Can I just go, just so I'm understood. The prayer for relief, there's the injunctive relief to withdraw the report. That's what you say the statute specifically bars. That's what a different statute bars. Right. Yes. Injunctive relief ordering the hospital to completely restore medical staff privileges? Correct. Is there a provision of the statute that bars that? I'm not sure what statute. About the health care quality? That's not a damages request. No, correct. It's injunctive relief. Right. And so what in the statute tells us how to treat that? As I understand it, the immunity standard that we've been talking about and the presumption that's very favorable to the hospital, that attaches when you seek damages. Correct? Correct. Okay. This is a request for injunctive relief. There is the first type of thing, withdraw the report. There's a particular provision of law that says, no, you can't get that injunctive relief. This one, grant injunctive relief ordering the hospital to completely restore the medical staff privileges. I think that just runs a circle back to the ultimate question, which is was the Health Care Quality Immunity Act satisfied, number one? In doing that, though, do we apply the very favorable rebuttable presumption? No, because it's not a damages request. Can I try to understand what you do? Counsel, this may help. I believe you argued that certain claims for injunctive relief are impermissible. Okay. Let's hypothesize that state law violations, you say federal law creates no right of action in a doctor. State law may create those causes of action. His claims are basically arising under state law. Here, the district court found there was immunity as to all claims under state law because the statute refers to immunity from all types of claims. I understood that if the state law immunity is upheld, that also means no possible injunctive relief on the causes of action pled here. That's correct. Am I correct? You are absolutely correct. Does that mean we never look at HICWA, then? We don't need to in a case like this? All right. So this comes up from time to time. The HICWA standard is damages only. You only get to the bylaw standard if there's a request for injunctive relief and the court believes there's... No, no, but I understand. But if Judge Lynch is right that HICWA doesn't create a cause of action, the only cause of action are state law, and if there's an immunity that applies to all those causes of action, damages included, that's dispositive, why would we ever have to interpret HICWA? Because HICWA, it's actually... But you wouldn't... It's a national standard, Your Honor. If Rhode Island didn't have an immunity, HICWA would kick in, correct? I think HICWA kicks in all the time. It's a national standard. But if Rhode Island has an immunity that's more protective than HICWA, why does a federal court look to HICWA? It's a different test, Your Honor. Motive doesn't matter under HICWA. Motive matters under Rhode Island law, or good faith matters. I think you're not grasping my question. It's a different test. Yeah. If the immunity that Rhode Island provides against... Is this a state law cause of action or a federal law cause of action? There's no federal cause of action. All the counts are state law, if I recall correctly. Okay, and we're here then on diversity? Correct. No, we're not diversity. The Healthcare Quality Improvement Act, I think, gives jurisdiction. Even though it's a state law cause of action? Yeah. Yeah. Yes, there's a claim here that it was violated. The NPDB is a federal agency. You came up on a federal question. I believe the basis for jurisdiction here is the federal question basis, not diversity. The only thing I'm just confused, as a defense only? And let me say, I share this concern. I was going to ask a question along this line. Where's the jurisdiction? Well, I believe the jurisdiction... Nobody argued it below, but we have to raise it. Well, I think it's a good question. I think jurisdiction is founded upon the Healthcare Quality Improvement Act. But you're also telling us the Healthcare Quality Improvement Act is only a federal defense in this case. Well, there's an allegation that there's been a violation. No, no, but for federal question jurisdiction, usually just the assertion of a federal defense is not enough to... I agree with that, Your Honor. So are you saying HICWA is only a federal defense in the case and that there's no other federal question in the case? It's only a federal defense as far as I'm concerned, since I didn't bring the claim. But that was the presumption, I believe, upon which jurisdiction was based. Well, because if there's only a state law claim and Rhode Island provides you immunity as to all those state law claims, that is dispositive, why do we have to talk about HICWA? You just would win under the Rhode Island immunity. Your Honor, the plethora of cases in federal court that arise out of hospital actions taken against physicians who reside in the same jurisdiction... Right. Well, that makes me think either that there is a... that the damages action is creating a cause of action under federal law. But maybe that's wrong. There's no private right of action under HICWA. So... Even as a... It's a violation of HICWA. There's no private right of action. Okay, so there's no private... It isn't... Go ahead, defense. Isn't federal jurisdiction important here because doctors cross state lines and the HICWA defense has to, if there is immunity when the doctor crosses state lines and applies for a job elsewhere, he has to disclose the HICWA immunity and the order here? My understanding is and has been that if there's a question concerning filings with the National Practitioner Data Bank or questions dealing with injunctive relief regarding those filings, there's federal jurisdiction to consider those claims. And there's... But the claims have to be actually pleaded. So I think what we're sort of asking is in the complaint is there... You said there's no private right of action under HICWA. So what federal cause of action is pleaded in the complaint? I believe the statute itself, the Healthcare Quality Improvement Act statute, gives jurisdiction to federal courts to consider these cases. Otherwise, you wouldn't... Well, that's the statutory scheme from what I understand. Okay. So if that answers your questions? Yeah. Any further questions? No. Thank you very much. Thank you. May I ask... May I just answer the jurisdictional question? Yeah, why don't you... That would be helpful to us just for a minute. Thank you. I know I didn't reserve. The amended complaint is attached at page 306 of the appendix. Paragraph 4 states, this court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1332 because Dr. Gilbert is a resident of Massachusetts, Kent Hospital is a Rhode Island corporation... Oh, it's diversity. Yes. Thank you. Thank you. Diversity. Thank you. Thank you all. That concludes argument in this case. Counsel is excused.